**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | | |
|---|---|---|
| **PATENTBRIDGE SOLUTIONS LLC** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | **Civil Action No.  7:25-cv-519** |
| | § | |
| **APPLE INC.** | § | **JURY DEMANDED** |
| | § | |
| *Defendant.* | § | |
| | § | |
| | § | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff PatentBridge Solutions LLC ("PatentBridge" or "Plaintiff") files this First Complaint for patent infringement against Apple Inc. ("Apple" or "Defendant").  Plaintiff alleges infringement of United States Patent Numbers 9,864,421 ("the '421 Patent") and 9,997,939 ("the '939 Patent"); collectively, the "Asserted Patents."

## PARTIES

1.       Plaintiff PatentBridge is a limited liability company organized and existing under the laws of the State of Texas having an address at 5900 Balcones Drive, Suite 100, Austin, Texas 78731-4298.

2.       Defendant Apple, Inc. is a corporation organized and existing under the laws of California, with one or more regular and established places of business in this District at least at 12545 Riata Vista Circle, Austin, Texas 78727; 12801 Delcour Drive, Austin, Texas 78727; 6800 W Parmer Lane, Austin, Texas 78729, and 3121 Palm Way, Austin, Texas 78758.  Apple may be served with process through its registered agent, the CT Corporation System, at 1999 Bryan St., Ste. 900 Dallas, Texas 75201-3136.  In November 2019, Apple stated that it had

approximately 7,000 employees in Austin and that it expected to open, in 2022, a $1 billion, 3 million-square-foot campus with capacity for 15,000 employees. *See* https://www.apple.com/newsroom/2019/11/apple-expands-in-austin/. In August 2025, Apple stated that "construction continues on Apple's second campus in Austin," and that "Apple has more than 13,000 team members across Texas, including thousands already working from the three completed office buildings, which exceed 1 million square feet," and that "[t]he three buildings currently under construction include an expansive new R&D lab space for Apple's Hardware Engineering, Hardware Technology, and Software Engineering teams." *See* https://www.apple.com/newsroom/2025/08/apple-increases-us-commitment-to-600-billionusd-announces-ambitious-program/. Apple also maintains Apple Store locations at 2901 S. Capital of Texas Hwy, Austin, Texas 78746 and 3121 Palm Way, Austin, Texas 78758 (collectively, the "Austin Apple Store Locations"). Apple is registered to do business in the State of Texas and has been since at least May 16, 1980.

## JURISDICTION AND VENUE

3.      This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code. Jurisdiction as to these claims is conferred on this Court by 35 U.S.C. §§1331 and 1338(a).

4.      This Court has specific and personal jurisdiction over Apple consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute. Upon information and belief, Apple has sufficient minimum contacts with the forum because Apple transacts substantial business in the State of Texas and in this Judicial District.

5.      This Court has specific personal jurisdiction over Apple at least in part because Apple conducts business in this Judicial District. Plaintiff's causes of action arise, at least in part, from Apple's contacts with and activities in the State of Texas and this Judicial District. The exercise of jurisdiction over Apple would not offend traditional notions of fair play and substantial justice. Apple, directly and/or through subsidiaries or intermediaries (including distributors, retailers, and others), has committed and continues to commit acts of infringement in this District by, among other things, offering to sell and selling products and/or services that infringe the patents-in-suit, including the accused devices as alleged herein.

6.      On information and belief, Apple also has derived substantial revenues from infringing acts in this Judicial District, including from the sale and use of infringing products including, but not limited to, the products accused of infringement below.

7.      On information and belief, Apple maintains authorized sellers and sales representatives that offer and sell products pertinent to this Complaint throughout the State of Texas, including this District and to consumers throughout this District.

8.      The Western District of Texas has previously been established as a proper venue for patent infringement actions against Apple. As one example, *in Carbyne Biometrics, LLC v. Apple Inc.*, No. 1:23-cv-00324-ADA, Dkt. 84 (W.D. Tex. Feb. 12, 2024), the Court denied Apple's motion to transfer the patent infringement case to the Northern District of California and the Federal Circuit upheld this decision by denying Apple's petition for a writ of mandamus seeking to reverse this Court's ruling. *See In re Apple Inc*., No. 2024-111, 2024 WL 1153977 (Fed. Cir. Mar. 18, 2024). For substantially the same reasoning and facts as in the *Carbyne* litigation, the Western District of Texas is also the proper venue for Plaintiff's action against Apple here.

9.      In addition, Defendant has knowingly induced and continues to knowingly induce infringement within this District by advertising, marketing, offering for sale and/or selling devices containing infringing functionality within this District, to consumers, customers, manufacturers, distributors, resellers, partners, and/or end users, and providing instructions, user manuals, advertising, and/or marketing materials which facilitate, direct or encourage the use of infringing functionality with knowledge thereof.  On information and belief, Defendant has knowingly induced and continues to knowingly induce infringement within this District by virtue of the product information advice communicated by its employees at its Austin Apple Store Locations.

## FACTUAL BACKGROUND

10.     On or about, September 22, 2025, Apple received a letter from PatentBridge, dated September 17, 2025, introducing PatentBridge, and notifying Apple of seven PatentBridge patents including the two Asserted Patents, and identifying the Apple USB-C Digital AV Multiport Adapter.  In particular, the letter identified United States Patent Nos. 9,864,421 ("the '421 patent"); 9,997,939 ("the '939 patent"); 10,409,757 ("the '757 patent"); 10,673,256 ("the '256 patent"); 10,224,727 ("the '727 patent"); 10,951,055 ("the '055 patent"); 10,574,070 ("the '070 patent").  Thus, Defendant has been aware of the Asserted Patents since, at least, September 22, 2025.

11.     In addition, Defendant has been aware of the Asserted Patents since, at least, the filing and/or service of the original Complaint in this case.

12.     The accused product is the Apple USB-C Digital AV Multiport Adapter (the "Accused Product").  In addition, the Accused Products shall include those products identified in Plaintiff's infringement contentions, to be served in accordance with the case scheduling order in this action.

## COUNT I

## DEFENDANT'S INFRINGEMENT OF U.S. PATENT NO. 9,986,421

13.     On January 9, 2018, United States Patent No. 9,986,421 entitled "Hub Having Complex Power Converters" was duly and legally issued after full and fair examination. PatentBridge is the owner of all right, title, and interest in and to the patent by assignment, with full right to bring suit to enforce the patent, including the right to recover for past infringement damages and the right to recover future royalties, damages, and income.  A true copy of the '421 Patent is incorporated by reference herein and may be accessed at https://patents.google.com/patent/US9864421B2/.

14.     Defendant has infringed the '421 Patent.

15.     The Accused Product is a hub electrically connecting to electronic equipment and a portable device located in an external environment via a Universal Serial Bus (USB) cable, the USB cable comprising a signal transmission line and a power transmission line.  The back side of the package containing the Accused Product describes this configuration, as follows:[1]



---

[1] The identification or location of components that correspond to claim terms, and the way that the claim terms are used here, is only exemplary, and is only provided to satisfy Plaintiff's pleading obligations.  Plaintiff's infringement allegations will be described in its infringement contentions and infringement expert report in accordance with the case schedule in this action. Plaintiff may add, remove, change, or supplement its infringement theories.  Similarly, Plaintiff may adopt claim construction positions that supersede any apparent or suggestive positions set forth in this Complaint, which is only provided to satisfy Plaintiff's pleading obligations.

16.     The Accused Product comprises a first connector, electrically connected to the electronic equipment via the USB cable:



17.    The Accused Product comprises a second connector, electrically connected to the portable device via the USB cable:



18.    The Accused Product comprises a controller, electrically connected between the first connector and the second connector, the controller has data transmission between the portable device and the electronic equipment mutually via the signal transmission line.  For example, the Accused Product contains a Cypress Semiconductor Part Number CYPD5225-96BZX USB Type-C Port Controller:







**EZ-PD™ CCG5**
**USB Type-C Port Controller**

**General Description**

EZ-PD™ CCG5 is a dual USB Type-C controller that complies with the latest USB Type-C and PD standards. EZ-PD CCG5 provides a complete dual USB Type-C and USB-Power Delivery port control solution for PCs, notebook, and dock. It can also be used in dual role and downstream-facing port applications. EZ-PD CCG5 uses Cypress' proprietary M0WS8 technology with a 32-bit, 48-MHz Arm® Cortex®-M0 processor with 128-KB flash and integrates two complete Type-C Transceivers including the Type-C termination resistors, $R_P$ and $R_D$. CCG5 also integrates high-voltage regulator. CCG5 is available in 40-QFN (1 port[3]) and 96-BGA (2 ports) packages.

19.    The Accused Product comprises a first direct current (DC)/DC converter, an input terminal of the first DC/DC converter is electrically connected to the electronic equipment via the power transmission line, an output terminal of the first DC/DC converter is electrically connected to the portable device via the power transmission line, the first DC/DC converter is applied to output stable voltage to the portable device.  For example, the Accused Product contains a Monolithic Power Systems MP8859 DC/DC Converter:







# MP8859
2.8 - 22V V$_{IN}$, 3A I$_{OUT}$, 4-Switch, Integrated Buck-Boost Converter with I²C Interface

## DESCRIPTION
The MP8859 is a synchronous, 4-switch, integrated buck-boost converter capable of regulating the output voltage from a 2.8V to 22V wide input voltage range with high efficiency. The integrated output voltage scaling and adjustable output current limit functions meet the USB power delivery (PD) requirement.

## FEATURES
- Wide 2.8V to 22V Operating Input Voltage Range
- 1V [1] to 20.47V Output Voltage Range (5V Default) with 10mV Resolution through I²C
- 3A Output Current or 4A Input Current
- Four Low R$_{DS(ON)}$ Internal Buck Power MOSFETs

20.     The first connector is USB 3.1 Power Delivery (PD) type C port, and the electronic equipment is operable either in a charged mode or in a power supplying mode via the USB PD protocol.



21.     The Monolithic Power Systems MP8859 DC/DC Converter datasheet states that the voltage and output current provided by the component "meet the USB power delivery (PD) requirement."



**MP8859**
**2.8 - 22V V$_{IN}$, 3A I$_{OUT}$, 4-Switch,
Integrated Buck-Boost Converter
with I²C Interface**

**DESCRIPTION**

The MP8859 is a synchronous, 4-switch, integrated buck-boost converter capable of regulating the output voltage from a 2.8V to 22V wide input voltage range with high efficiency. The integrated output voltage scaling and adjustable output current limit functions meet the USB power delivery (PD) requirement.

**FEATURES**

- Wide 2.8V to 22V Operating Input Voltage Range
- 1V ⁽¹⁾ to 20.47V Output Voltage Range (5V Default) with 10mV Resolution through I²C
- 3A Output Current or 4A Input Current
- Four Low R$_{DS(ON)}$ Internal Buck Power MOSFETs

## COUNT II

## DEFENDANT'S INFRINGEMENT OF U.S. PATENT NO. 9,997,939

22.    On June 12, 2018, United States Patent No. 9,997,939 entitled "Hub" was duly and legally issued after full and fair examination.  PatentBridge is the owner of all right, title, and interest in and to the patent by assignment, with full right to bring suit to enforce the patent, including the right to recover for past infringement damages and the right to recover future royalties, damages, and income.  A true copy of the '939 Patent is incorporated by reference herein and may be accessed at https://patents.google.com/patent/US9997939B2/.

23.    Defendant has infringed the '939 Patent.

24.     The Accused Product is a hub, electrically connecting to an electronic equipment and at least a portable device located in external environment via a Universal Serial Bus cable, the Universal Serial Bus cable comprising a signal transmission line and a power transmission line.  The back side of the package containing the Accused Product describes this configuration, as follows:



25.    The Accused Product comprises a first connector, electrically connected to the electronic equipment via the Universal Serial Bus cable:



26.    The Accused Product comprises at least a second connector, communicatively connected to the first connector and electrically connected to the portable device via the Universal Serial Bus cable, wherein a data transmission between the portable device and the electronic equipment mutually is via the signal transmission line, the first connector, and the second connector:



27.     The hub also contains a controller, that is configured to provide data transmission between the portable device and the electronic equipment mutually via the signal transmission line, the first connector, and the second connector.  For example, the Accused Product contains a Cypress Semiconductor Part Number CYPD5225-96BZX USB Type-C Port Controller:







EZ-PD™ CCG5

**USB Type-C Port Controller**

**General Description**

EZ-PD™ CCG5 is a dual USB Type-C controller that complies with the latest USB Type-C and PD standards. EZ-PD CCG5 provides a complete dual USB Type-C and USB-Power Delivery port control solution for PCs, notebook, and dock. It can also be used in dual role and downstream-facing port applications. EZ-PD CCG5 uses Cypress' proprietary M0WS8 technology with a 32-bit, 48-MHz Arm® Cortex®-M0 processor with 128-KB flash and integrates two complete Type-C Transceivers including the Type-C termination resistors, $R_P$ and $R_D$. CCG5 also integrates high-voltage regulator. CCG5 is available in 40-QFN (1 port[3]) and 96-BGA (2 ports) packages.

28.     The first connector is a Universal Serial Bus 3.1 Power Delivery type C port.



29.    The electronic equipment can be either in a charged mode or in a power supplying mode via the Universal Serial Bus Power Delivery protocol.  For example, the Accused Product contains a Monolithic Power Systems MP8859 DC/DC Converter:



30.    The Monolithic Power Systems MP8859 DC/DC Converter datasheet states that the voltage and output current provided by the component "meet the USB power delivery (PD) requirement."



**DESCRIPTION**

The MP8859 is a synchronous, 4-switch, integrated buck-boost converter capable of regulating the output voltage from a 2.8V to 22V wide input voltage range with high efficiency. The integrated output voltage scaling and adjustable output current limit functions meet the USB power delivery (PD) requirement.

**FEATURES**
- Wide 2.8V to 22V Operating Input Voltage Range
- 1V (1) to 20.47V Output Voltage Range (5V Default) with 10mV Resolution through I²C
- 3A Output Current or 4A Input Current
- Four Low R$_{DS(ON)}$ Internal Buck Power MOSFETs

31.    The electronic equipment is operable either in a charged mode or in a power supplying mode via the USB PD protocol.  For example, the electronic equipment can act as a power receiver.

## ACTS OF INFRINGEMENT

32.    Defendant has infringed and is infringing, either literally or under the doctrine of equivalents, at least claim 1 of the '421 Patent and at least claim 1 of the '939 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license, the Accused Product.

33.    Alternatively, and in addition, upon information and belief, Defendant has directly infringed, and is continuing to directly infringe, literally or under the doctrine of equivalents, at least claim 1 of the '421 Patent and at least claim 1 of the '939 Patent, by displaying, demonstrating, configuring, and internally using and testing the Accused Product in infringing configurations in the United States, including in this judicial district, in violation of 35 U.S.C. § 271(a).

34.     In addition, upon information and belief, since at the least the date when Defendant was on notice of its infringement, Defendant has actively induced, under U.S.C. § 271(b), infringement of at least claim 1 of the '421 Patent and at least claim 1 of the '939 Patent by inducing its distributors, customers, subsidiaries, importers, and/or consumers to directly infringe one or more claims of the patents by using, offering for sale, selling, and/or importing the Accused Product.  Defendant's affirmative acts of selling the Accused Products, causing the Accused Products to be sold, advertised, offered for sale, and/or distributed, and providing instructions explaining how to use the Accused Products have induced and continue to induce Defendant's customers, and/or end-users to use the Accused Products in their normal and customary way to infringe the Asserted Patents.  For example, it can be reasonably inferred that end-users will use the infringing products, which will cause the end-users to use the elements that are the subject of the claimed invention.  Defendant specifically intended and was aware that these normal and customary activities would infringe the Asserted Patents.  In addition, Defendant provides marketing and/or instructional materials, such as user guides, product packaging, website content, and sales advice at its Austin Apple Store Locations and others, that specifically teach end-users to use the Accused Products in an infringing manner.  By providing such instructions, Defendant knows (and has known), or was willfully blind to the probability that its actions have, and continue to, actively induce infringement.  Defendant has also established distribution channels for the Accused Product into and within the United States, manufactured the Accused Product in conformity with standards recited in the claims of the Asserted Patents, manufactured the Accused Product in conformity with U.S. laws and regulations, distributed or made available instructions or manuals for the Accused Product to purchasers and prospective buyers, and/or providing technical support, replacement parts, or

services for the Accused Product to these purchasers in the United States.  By way of example only, Defendant has induced infringement and continue to induce infringement of, in addition to other claims, at least the specific claims identified above of the Asserted Patents by selling in the United States, without Plaintiff's authority, infringing products and providing instructional materials.  These actions have induced and continue to induce the direct infringement of the Asserted Patents by end-users.  Defendant performed acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the Asserted Patents and with the knowledge, or willful blindness to the probability, that the induced acts would constitute infringement.  Upon information and belief, Defendant knew of the Asserted Patents and knew of its infringement, including by way of this lawsuit as described above.

35.    In addition, Defendant contributorily infringes under U.S.C. § 271(c) at least claim 1 of the '421 Patent and at least claim 1 of the '939 Patent.  Defendant knew, or should have known, at least as a result of Plaintiff's letter to Defendant, or as of the service of the original Complaint in this action, that third parties, such as end-users, would infringe the Asserted Patents, and with knowledge that the Accused Product is especially designed or adapted to operate in a manner that infringes the Asserted Patents.  On information and belief, the Accused Product has no substantial non-infringing uses.  In addition, the specific and intended functions of the Accused Product are a material part of the inventions of the Asserted Patents, and does not constitute a staple article of commerce suitable for substantial non-infringing use.

## **FURTHER ASSERTIONS INVOLVING ALL CLAIMS**

36.    The Asserted Patents are presumed valid under 35 U.S.C. § 282.

37.    The Asserted Patents are valid and enforceable.

38.     Defendant has had knowledge of its infringement of the Asserted Patents as of its receipt of the letter described above, and alternatively, through service of the original Complaint in this action.  Alternatively, and in addition, on information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Plaintiff's patent rights.

39.     Defendant's infringement has been and continues to be willful and deliberate. Upon information and belief, Defendant deliberately infringed the Asserted Patents and acted recklessly and in disregard to the Asserted Patents by making, having made, using, importing, and offering for sale products that infringe the Asserted Patents.  Upon information and belief, the risks of infringement were known to Defendant and/or were so obvious under the circumstances that the infringement risks should have been known.  Upon information and belief, Defendant has no reasonable non-infringement theories.  Upon information and belief, Defendant has not attempted any design/sourcing change to avoid infringement.  Defendant has acted despite an objectively high likelihood that its actions constituted infringement of the Asserted Patents.  In addition, this objectively-defined risk was known or should have been known to Defendant.  Upon information and belief, Defendant has willfully infringed and/or continues to willfully infringe the Asserted Patents.  Defendant exhibited egregious behavior beyond typical infringement in that, despite being aware of its infringement, defendant did not develop any non-infringement theories, did not attempt any design or sourcing change, and did not otherwise cease its infringement.

40.     To the extent any marking or notice was required by 35 U.S.C. § 287, Plaintiff has complied with the applicable marking and/or notice requirements of 35 U.S.C. § 287.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER

WHEREFORE, Plaintiff prays for judgment that:

1.      Defendant has infringed and continues to infringe, one or more claims of the Asserted Patents;

2.      Defendant be ordered to pay damages caused to Plaintiff by Defendant's unlawful acts of infringement;

3.      Defendant's acts of infringement have been, and are, willful;

4.      Plaintiff recover actual damages under 35 U.S.C. § 284;

5.      Plaintiff be awarded supplemental damages for any continuing post-verdict infringement up until final judgment;

6.      Plaintiff be awarded a compulsory ongoing royalty;

7.      Plaintiff be awarded an accounting of damages;

8.      Plaintiff be awarded enhanced damages for willful infringement as permitted under the law;

9.      A judgment and order requiring Defendant to pay to Plaintiff pre-judgment and post-judgment interest on the damages awarded, including an award of pre-judgment interest, pursuant to 35 U.S.C. § 284, from the date of each act of infringement by Defendant to the day a damages judgment is entered, and a further award of post-judgment interest, pursuant to 28 U.S.C. § 1961, continuing until such judgment is paid, at the maximum rate allowed by law;

10.     An award to Plaintiff of the costs of this action and its reasonable attorneys' fees pursuant to 35 U.S.C. §285; and

11.     Such other and further relied as the Court deems just and equitable.

DATED: November 10, 2025          Respectfully submitted,

/s/ *Robert D. Katz*
Robert D. Katz
Texas Bar No. 24057936
KATZ PLLC
8350 N. Central Expressway, Suite 1900
Dallas, TX 75206
214-865-8000
888-231-5775 (fax)
rkatz@katzfirm.com

**ATTORNEY FOR PLAINTIFF**
**PATENTBRIDGE SOLUTIONS LLC**